FILED
OFFICE
COURT, E.D.N.Y.
SEP 2 2005 ★
BROOKLYN OFFICE

ORIGINAL
DLF
CM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOHNSON HOME CARE SERVICES, INC.,

        Plaintiff,

  -against-

UNITED STATES OF AMERICA,

        Defendant.

-----------------------------------------------------------x

**AMENDED MEMORANDUM AND ORDER**
Case No. CV-04-0129(FB)(JMA)

*Appearances:*
*For the Plaintiff:*
BARRY A. FURMAN, Esq.
STEVEN KAPUSTIN, Esq.
350 Sentry Parkway, Building 640
Blue Bell, PA 19422

*For the Defendant:*
ROSALYNN R. MAUSKOPF, Esq.
United States Attorney
By: Bonni J. Perlin
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, DC 20044

**BLOCK, District Judge:**

        Plaintiff Johnson Home Care Services, Inc. ("Johnson Home") filed suit pursuant to 26 U.S.C. § 6630(d)(1)(B), seeking review of an administrative decision of the Internal Revenue Service ("IRS"), which upheld a levy on Johnson Home's property for unpaid federal employment taxes, interest, and penalties. Johnson Home moved for summary judgment pursuant to Fed. R. Civ. P. 56, and defendant United States of America

1

("United States") cross-moved for an order affirming the IRS's determination.[1] For the reasons set forth below, the Court denies Johnson Home's motion and grants the United States' motion.

I.

Johnson Home, a corporation in the business of providing home health care services to individuals, incurred a federal tax liability comprised of quarterly withholdings for the quarters ending September 30, 2001 through September 30, 2002; unemployment taxes for the year ending December 31, 2001, and a civil penalty for failing to furnish timely information for the year ending December 31, 1998. According to Johnson Home, the tax liability accrued during these periods as a result of a twenty-five percent loss in business, which rendered it unable to pay its employment taxes, including withholding from employees' wages and its employer's contribution. Johnson Home initially attempted to negotiate a payment plan with an IRS Revenue Officer, proposing to make monthly payments of $3000 per month to the IRS; the Revenue Officer rejected the plan, noting that these monthly payments would be insufficient to fully pay the amount of the liability prior to the expiration of the statute of limitations.[2] On December 24, 2002, Johnson Home

---

[1] Because the United States submitted a Rule 56.1 statement and included material outside the pleadings with its moving papers, the Court construes its motion as one for summary judgment. *See Cipolla v. IRS*, 2003 WL 22952617 at *2 (E.D.N.Y. Nov. 5, 2003); *see also Living Care Alternatives v. United States*, 411 F.3d 621, 625 n.4 (6th Cir. 2005) (noting that "[m]any courts, including this one, have allowed motions for summary judgment when reviewing collection due process hearings").

[2] The statute of limitations or Collection Statute Expiration Date ("CSED") for collection by levy is 10 years after the assessment of the tax. *See* 26 U.S.C. § 6502(a). The

received a Final Notice of Intent to Levy and Notice of Right to a Hearing ("Final Notice") from the IRS. The Final Notice advised Johnson Home that if it did not pay the full amount due within 30 days, the IRS would exercise its right to take Johnson Home's property, or rights to property, to satisfy the liability.

Johnson Home exercised its right to a collection due process ("CDP") hearing under 26 U.S.C. § 6330(c), which provides for the right to a hearing before an IRS Appeals Officer ("AO") before a levy may be made on any property or right to property. In determining whether to sustain a levy action, an Appeals Officer must consider (1) whether the requirements of any applicable law or administrative procedure have been met; (2) any issues raised by the taxpayer, which may include challenges to the appropriateness of collection actions and offers of collection alternatives such as offers in compromise or installment plans, and (3) "whether any proposed collection action balances the need for efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." 26 U.S.C. § 6330(c)(3).

On March 12, 2003, a CDP hearing was held with IRS Appeals Officer Gerard Ohrtman ("Ohrtman" or "AO"). During the hearing, at which Johnson Home was represented by counsel, Ohrtman advised Johnson Home that its then-current tax liability was $1,119,752, in addition to the amount owed on Johnson Home's quarterly withholding return for the period ending December 31, 2002. Johnson Home did not contest the amount

---

IRS may request that the taxpayer extend the statute of limitations in connection with an installment agreement; however, IRS policy limits extensions to five years beyond the original statutory period. *See* IRS Manual § 5.14.2.1 (Mar. 30, 2002).

of the tax liability, but proposed an installment payment plan in lieu of the levy. Johnson Home advised Ohrtman that it was in the process of moving to a new location which, after the payment of unspecified but "substantial" start-up costs, would cut down on its administrative expenses and allow it to begin making payments of $3000 per month toward the liability; Johnson Home also stated that once "this matter with the IRS and a few other matters" were resolved, its monthly professional fees would decrease, allowing it to put additional funds toward the installment plan. Case Activity Records at 1; Ltr. of April 1, 2003, at 2.[3] Johnson Home additionally informed Ohrtman that its president, Grace Johnson ("Ms. Johnson") owned substantial equity in a home located in New York state, but that her involvement in a "messy divorce" had prevented her from borrowing against the equity in the residence in order to make a lump sum payment on the tax liability. Case Activity Records at 1. Johnson Home represented that because the equity could not be immediately accessed, Ms. Johnson was willing to offer the IRS a mortgage on her home and commit to selling the property in order to make the payment once her divorce issues were resolved. Given the information Johnson Home provided about Ms. Johnson's residence, Ohrtman gave Johnson Home an additional three weeks to suggest

---

[3]References to "Case Activity Records" in this opinion refer to the internal IRS records which document the proceedings surrounding the IRS determination to levy upon Johnson Home's property, including a description of events preceding the CDP hearing, the CDP hearing itself, and subsequent correspondence between Johnson Home and the IRS regarding the propriety of the proposed levy action. References to "Letters" in this opinion refer to correspondence submitted by Johnson Home to the IRS following the CDP hearing. All material was included as part of the administrative record submitted to the Court by both parties.

a collection alternative that would be in the interest of both the government and Johnson Home.

On April 1, 2003, Johnson Home responded to Ohrtman by letter, stating that Johnson Home did not have the ability to make a substantial payment towards the liability, as the assets that might be used to fund such a substantial payment were "not assets of this taxpayer." Ltr. of April 1, 2003, at 3. Instead, Johnson Home proposed a second installment agreement whereby it would pay $3000 per month for the first twelve months, increased to $5000 per month for the following six months, after which time Johnson Home's monthly payments would be increased to $14,000 per month. As of December 31, 2002, Johnson Home's balance sheet showed total assets of approximately $1.25 million, and total liabilities of approximately $1.5 million. In support of its ability to make payments under the second proposed installment plan, Johnson Home submitted a signed declaration from Ms. Johnson, which included a projected profit and loss statement predicting that a net income of $16,350 per year was "reasonably achievable absent an unanticipated change in circumstances." Ltr. of April 2, 2003, Attach. at 1. Johnson Home also stated that should the IRS reject its proposed payment agreement and decide to levy upon its accounts receivables, it would be forced to liquidate.

The IRS Case Activity Records, which describe the CDP hearing as well as subsequent correspondence between Ohrtman and Johnson Home, show that Ohrtman reviewed Johnson Home's tax and financial history and concluded that it was a bad risk for a payment agreement; Ohrtman also noted that Johnson Home was "heavily indebted"

to the Service, and that it had not given any indication of where the additional revenue to fund its second proposed installment agreement would be found "beyond the fact that [Johnson Home is] moving to new quarters where the rent will be decreased." Case Activity Records at 2. Ohrtman reported that following the CDP hearing Johnson Home abandoned its representations regarding the possibility of funding a substantial first payment through an equity loan on Ms. Johnson's residence, and that while an agreement under which Johnson Home would borrow on the equity to make a large payment up front "seemed like a balance between the taxpayer and the Service," the proposal for an installment agreement without such a payment was not in the government's interest. *Id.* Ohrtman also noted that "[i]t does not seem in the interest of the Service to accept a mortgage on a property as a contingent to an agreement. Divorce litigation can drag on for years." *Id.* at 1. Finally, Ohrtman observed that even if Johnson Home agreed to an extension of the CSED to 15 years, full payment within that time frame would require that Johnson Home begin making monthly payments of over $13,000 starting immediately, and not in the following year as envisioned by Johnson Home's second proposed installment plan.

The IRS issued a Notice of Determination ("Determination") on December 17, 2003, sustaining the levy on Johnson Home's property. The Determination explained that because Johnson Home was not current on its tax deposits for the previous two quarters it was not entitled to submit an offer in compromise. The IRS also rejected Johnson Home's proposed collection alternatives, noting that its first proposed installment

plan of $3000 per month would not fully pay the taxes due within the statutory period for collection, and that the second proposed installment plan was not acceptable because a review of Johnson Home's financial information failed to explain the source of the money needed to make the payments. The IRS concluded that absent Johnson Home's willingness to provide an acceptable alternative to the proposed action, the proposed levy action "balances the efficient collection of the taxes with your legitimate concern that the collection be no more intrusive than necessary." Determination at 4.[4]

Johnson Home challenges the IRS's final determination upholding the levy on the grounds that Appeals Officer Ohrtman (1) did not adequately conduct the balancing test required by 26 U.S.C. § 6330(c)(3)(C); (2) abused his discretion in rejecting the proposed installment plan because he (a) failed to consider the fact that recovery of the plaintiff's trust fund recovery penalty could be secured through a mortgage on Ms. Johnson's residence,[5] (b) erroneously concluded that Johnson Home withdrew its offer to pay its tax liability through proceeds from the sale of Ms. Johnson's home, and (c) incorrectly

---

[4]The"Determination" is a separate document included as part of the administrative record submitted to the Court by both parties.

[5]Federal law requires employers to withhold from their employees' paychecks their share of federal social security and income taxes. *See* 26 U.S.C. §§ 3102, 3402. The employer holds the withheld taxes "in trust" for the government and must pay them over. If the employer withholds the taxes but fails to remit them, the government seeks the unpaid funds from the employer. "Section 6672(a) imposes [personal] liability for the unremitted funds on any person who is required to collect, truthfully account for, and pay over the tax, but who willfully fails to do so." *Siquieros v. United States*, 2004 WL 2011367 at * 6 (W.D. Tex. July 27, 2004) (citing 26 U.S.C. § 6672(a)). Both parties agree that Ms. Johnson is most likely independently liable for the unpaid trust fund portion of Johnson Home's federal employment tax liabilities under section 6672.

7

determined that Johnson Home's second proposed installment plan would not pay the full amount of the liability within the statutory period; (3) imposed more onerous requirements on Johnson Home than the IRS revenue officer; and (4) confused the taxpayer, Johnson Home, with its principal, Ms. Johnson.

## II.

### A. Standard of Review under 26 U.S.C. § 6330(d)

When the underlying tax liability is not at issue, as in this case, the Court reviews the final IRS determination for abuse of discretion. *See Ramos v. IRS*, 351 F. Supp. 2d 5, 9 (N.D.N.Y. 2004) (citing *Pelliccio v. United States*, 253 F. Supp. 2d 258, 262 (D. Conn. 2003)); *see also Living Care*, 411 F.3d at 626 (noting that the statute's legislative history establishes that where the validity of the liability is not part of the appeal, the taxpayer may challenge the IRS determination only for abuse of discretion). A decision is an abuse of discretion if it is " 'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis, or . . . on other considerations that Congress could not have intended to make relevant.'" *Ramos*, 351 F. Supp. 2d at 9 (quoting *MRCA Info. Servs. v. United States*, 145 F. Supp. 2d 194, 199 (D. Conn. 2000)). Under this standard of review, the final determination of the IRS Appeals Officer is given significant deference. *See Olsen v. United States*, 411 F.3d 144, 150 (1st Cir. 2005) ("[I]n providing for CDP hearings on what is ordinarily a scant record, Congress 'must have been contemplating a more deferential review of these tax appeals than of more formal agency decisions. . . . [W]ithout a clear abuse of discretion in the sense of clear taxpayer abuse and

unfairness by the IRS, as contemplated by Congress, the judiciary will inevitably become involved on a daily basis with tax enforcement details that judges are neither qualified, nor have time, to administer.'" (quoting *Living Care*, 411 F.3d at 625, 631)).

**B. Summary Judgment Standard**

A Court may grant a motion for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party meets its burden of demonstrating the absence of a genuine issue of material fact, the opposing party must set forth specific facts indicating a genuine issue for trial exists in order to avoid a grant of summary judgment. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Andersen*, 477 U.S. at 247-48. Moreover, the dispute about a material fact must be "genuine," which means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. "The non-moving party may not rely on conclusory allegations or unsubstantiated speculation." *Byrnie v. Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001); *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (A motion for summary judgment "will not be defeated merely . . . on the basis of conjecture or surmise."). In deciding whether to grant summary judgment, the Court resolves "all ambiguities and draw[s] all factual inferences

in favor of the party opposing the motion." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted).

## III.

### A. Application of the Balancing Analysis

Johnson Home argues that the IRS Appeals Officer abused his discretion under 26 U.S.C. § 6330(c)(3) by failing to properly consider the concerns of Johnson Home that a levy would destroy its business. This argument is without merit. The general practice of reviewing courts is to show deference to Appeals Officers' conclusions regarding the balancing analysis. *See Living Care*, 411 F.3d at 627 (citing cases and stating that most reviewing courts "have merely affirmed the Appeals Officer's determination that he conducted the balancing test and that he found the results to be consistent with the decision to proceed with levying the property"). Moreover, the IRS is not required to consider in its balancing analysis whether it will receive any revenue from a levy and sale, or whether the taxpayer's business will have to close down due to the levy and sale. *See id.* at 628 (noting that the case law "supports the proposition that the government is not required to continue subsidizing failing businesses by foregoing tax collection," and that "[a]ny other conclusion would create a bizarre tax system with perverse incentives for businesses to maintain themselves on the edge of insolvency in order to enjoy immunity from tax enforcement"). *See also Medlock v. United States*, 325 F. Supp. 2d 1064, 1080 (C.D. Cal. 2003) (holding that the Appeals Officer was not required to consider the impact of a levy on the customers of the taxpayer's day care center and stating that "the Service need

not accept a collection proposal in lieu of a levy whenever there is an indication that a levy may lead to the demise of the taxpayer's business"); *Kitchen Cabinets, Inc. v. United States*, 2001 WL 237384 at *2 (N.D. Tex. Mar. 6, 2001) (holding that the IRS was not obligated to accept a proposed installment agreement in lieu of a levy although a levy might lead to the demise of the plaintiff's business).

Courts have also held that an Appeals Officer does not abuse her discretion in conducting the balancing analysis where the record reflects consideration of the taxpayer's history and financial information, or where the Appeals Officer provides a rational explanation for her determination that the balancing requirement has been met. *See Olsen v. United States*, 326 F. Supp. 2d 184, 189 (D. Mass. 2004) (holding that the review of taxpayer's financial circumstances and case history shows that the Appeals Officer did not abuse her discretion in determining that the proposed enforcement action appropriately balanced the need for efficient collection of taxes against the taxpayer's concern that the action be no more intrusive than necessary); *Owens Motor Coach, Inc. v. United States*, 2003 WL 22872510 at *2 (W.D. Pa. Oct. 14, 2003) (rejecting taxpayer's argument that the Appeals Officer applied only "lip service" to the balancing analysis where Appeals Officer offered several rational explanations for his decision, including the fact that the taxpayer owed penalties and interest, had a history of late payments and deposits, and could not post a bond or other collateral).

The IRS Case Activity Records and Notice of Determination demonstrate that AO Ohrtman considered the various payment alternatives offered by Johnson Home, and

11

explained his rationale for rejecting these alternatives, explicitly noting that a payment alternative that did not include a substantial first payment to the IRS did not strike a balance between the government's and taxpayer's interests. Absent Johnson Home's unwillingness to provide an acceptable alternative to the proposed levy, the IRS determined that the proposed action balanced the efficient collection of taxes with plaintiff's legitimate concern that the collection action be no more intrusive than necessary. Given that the IRS is not required to consider the effect of a levy on a taxpayer's business, or to accept a payment alternative because a levy will lead to the demise of that business, the Court cannot say that the Ohrtman abused his discretion in conducting the balancing analysis, especially where, as here, the AO expressly considered the taxpayer's financial situation and tax history, and gave reasoned explanations for the rejection of various payment options proposed by Johnson Home in lieu of the levy.

## B. Rejection of Johnson Home's Proposed Installment Plans

Johnson Home has also failed to point to any evidence demonstrating that the Appeals Officer's rejection of its proposed installment plans was an abuse of discretion. The IRS "has the discretion to accept or reject any proposed installment agreement." 26 C.F.R. § 301.6159-1(b). Upon review, the task of the Court "is not to determine whether in its own opinion . . . an installment agreement would best serve both the interest of the IRS and [taxpayer], 'but to determine whether there is an adequate basis in law for the officer's conclusion that it did not.'" *MCRA Info. Servs.*, 145 F. Supp. 2d at 199 (quoting *RCA Corp. v. United States*, 664 F.2d 881, 886 (2d Cir. 1981)). *See also Orum v. C.I.R.*, 412 F.3d 819,

820-21 (7th Cir. 2005) (rejecting taxpayer's argument that installment payments are so superior to seizing and selling property that the IRS should be obliged to prefer them, because "the Judicial Branch does not instruct the Executive Branch how to make executive decisions").

Courts reviewing final determinations of the IRS have found rejection of installment agreements to be proper and not an abuse of discretion in situations where the taxpayer "cannot establish its ability to make the proposed payments." *Berkey v. IRS*, 2001 WL 1397680 at *5 (E.D. Mich. Sept. 20, 2001); *see also Kitchen Cabinets*, 2001 WL 237384 at *2 (N.D. Tex. Mar. 6, 2001) ("Except for a vague allusion to implementation of certain unspecified 'cost-cutting measures,' the [taxpayer] provided no detail about how [it] would make even those proposed payments, since its net monthly income was more than $2100 short of what [the taxpayer] proposed to pay."); *Stop 26-Riverbend, Inc. v. United States*, 2003 WL 1908747 at *3 (S.D. Ohio Mar. 12, 2003) ("There is nothing in the record to suggest that [the] taxpayer supported its proposed installment agreement with financial information to show that payments could be made" where "Stop 26 had employment tax liability in excess of $1 million, was not current on its tax obligations, [and] was having financial problems"); *Sillavan v. United States*, 2002 WL 400804 at *4 (N.D. Ala. Jan. 11, 2002) ("Besides vague allusions to 'future anticipated income' from the small gardening center business . . ., Sillavan offered no hint as to how he might have been able to make any kind of substantial payments to the IRS at the time his case was reviewed by the Appeals Officer.").

13

Rejection of a taxpayer's proposed installment plan will also be upheld where the taxpayer has a history of non-compliance with tax laws. *See TTK Management v. United States*, 2000 WL 33122706 at *2 (C.D. Cal. Nov. 21, 2000); *Berkey*, 2001 WL 1397680 at *5; *Manguia Printers, Inc. v. United States*, 2005 WL 495034 at *2 (W.D. Tex. Feb. 28, 2005). Furthermore, it is not an abuse of discretion for an Appeals Officer to refuse to delay a proposed collection action in order to allow the taxpayer to sell an asset to satisfy the liability. *See Medlock*, 325 F. Supp. 2d at 1078 ("[The Appeals Officer] did not abuse her discretion in determining that waiting for an additional unknown, indeterminate period of time for Medlock to finally sell her day care business to her mother was not in the interest of the efficient collection of taxes.") (internal quotation marks omitted); *see also Stop-26*, 2003 WL 1908747 at *3 ("[The Appeals Officer] was also justified in rejecting the taxpayer's suggestion that the IRS withhold collection proceedings pending a sale or refinancing" where "Stop-26 was unable to provide the Appeals Officer with any assurances that a sale or refinancing could be accomplished within a reasonable period of time."); *Clawson v. Comm'r*, 2004 WL 870253 (T.C. Apr. 23, 2004) (upholding IRS's rejection of collection alternative which involved postponing a levy to allow taxpayer to sell her home at some "unspecified point in the future"). Finally, it has been held that an Appeals Officer does not abuse her discretion where she requires full payment of the tax liability prior to the expiration of the CSED. *See Dudley's Commercial & Indus. Coating, Inc. v. United States*, 292 F. Supp. 2d 976, 986 (M.D. Tenn. 2003) (upholding Appeals Officer's decision to require full payment before the CSED where the taxpayer was heavily indebted to the IRS).

The Court cannot conclude that the AO's rejection of Johnson Home's proposed installment plans was an abuse of discretion. The AO reviewed Johnson Home's tax history, financial information, and level of indebtedness, and determined that it was a bad risk for a payment plan. The AO also found that Johnson Home had "very little in cash and insubstantial equity in assets" and that its expressed "belie[f]" that its administrative expenses would decrease in the future was insufficient to establish its ability to make the proposed installment payments. Case Activity Records at 2; Ltr. of April 1, 2003, at 2. The Court cannot say that the AO's refusal to credit Johnson Home's representation regarding its ability to make future payments or to accept the unsupported declaration of Ms. Johnson regarding future projections of net income was an abuse of discretion, especially considering that Johnson Home had a history of financial instability and non-compliance with payroll tax laws, and was heavily indebted to the IRS.

Furthermore, it was not an abuse of discretion for the AO to refuse to accept a mortgage on Ms. Johnson's residence as security for payment on some future date when the property could be sold. The AO considered this alternative, as required by § 6630(c), but concluded that it was not in the government's interest to delay collection for an unspecified period of time pending completion of Ms. Johnson's divorce proceedings. Contrary to Johnson Home's assertions that the AO erroneously believed that Johnson Home had withdrawn its offer, the record reflects the AO's continuing understanding that Johnson Home had offered a mortgage on the residence but that it would not be able to fund a substantial first payment on the tax liability through an immediate loan on the

equity in the property. Because the AO determined that a payment plan that did not involve a substantial first payment was not in the interest of the government, any asserted confusion regarding whether the mortgage offer had been withdrawn is irrelevant, and does not render the AO's determination an abuse of discretion.

Johnson Home also argues that the Notice of Determination supports an asserted tax liability of approximately $700,000, and not over $1 million, as the AO stated during the CDP hearing. Johnson Home argues that it was therefore an abuse of discretion for the AO to reject the second proposed installment plan on the ground that it would not pay the full amount of the tax liability within the statutory period, because that conclusion was based on an erroneous calculation of the tax liability. By the Court's calculations the Notice of Determination does support a tax liability of over $1 million. However, even assuming that Johnson Home's total tax liability amounted to only $700,000, the Court cannot say that it would be an abuse of discretion for the AO to require full payment of the tax liability prior to the expiration of the statute of limitations, especially given the significant sum owed by Johnson Home, as well as its history of financial instability and non-compliance with tax laws. *See Dudley's*, 292 F. Supp. 2d at 986.

Moreover, the IRS's Notice of Determination explains that its rejection of Johnson Home's second proposed installment plan was based on Johnson Home's failure to substantiate its ability to make payments under the plan, not on the fact that the plan would not fully pay the liability within the CSED. As discussed above, Johnson Home's failure to adequately demonstrate its ability to make the installment payments serves as

an adequate and independent basis for the rejection of the second proposed plan. *Cf. Comfort Plus Health Care, Inc. v. Comm'r*, 2005 WL 1656914 at *6 (D. Minn. July 14, 2003) (holding that even if the Appeals Officer erred in refusing to consider the taxpayer's offer in compromise on the grounds that the taxpayer was not current on its taxes, there were other adequate grounds for finding that the taxpayer had not established its eligibility for an offer in compromise.)

## C. Johnson Home's Remaining Arguments

Johnson Home's remaining arguments that the AO abused its discretion in sustaining the levy are also without merit. Johnson Home first argues that by requiring it to make a substantial payment up front and pay the total liability in full prior to the expiration of the CSED, the AO abused his discretion by imposing requirements more onerous than those imposed by the Revenue Officer, who was willing to accept an offer of payment over a period of time that would be longer than the statute of limitations. Johnson Home does not cite any authority for the proposition that this constitutes an abuse of discretion, but points only to IRS Manual § 6.8.1.3, which provides that the mission of the Appeals Officer "is to resolve tax controversies without litigation, on a basis which is fair and impartial to both the Government and the taxpayer and in a manner that will enhance voluntary compliance and public confidence in the integrity and efficiency of the Service."

As an initial matter, it is unclear whether the Revenue Officer was prepared to accept an installment plan that would allow Johnson Home to pay the full amount of the

liability within the CSED; rather, it appears that the Revenue Officer merely rejected the first proposed installment plan on the ground that payments of $3000 per month were insufficient to fully pay the liability within the requisite time frame, and noted that the payments would have to be increased substantially to ensure payment within the limitations period. Even assuming that Johnson Home's characterization is accurate, "'the Internal Revenue Manual confers no rights on taxpayers,' and "the procedures contained therein are intended only to aid in the internal administration of the IRS.'" *Olsen*, 326 F. Supp. 2d at 188 n.2 (rejecting taxpayer's claim that IRS Appeals Officer abused his discretion in rejecting her offer in compromise by failing to follow the applicable guidelines set forth in the manual) (citations omitted). Therefore, to the extent that Johnson Home relies for its assertion that the AO abused its discretion upon statements intended only to guide the IRS's internal procedures, the Court finds this argument to be without merit. As discussed above, there is sound evidentiary and legal support for the rejection of Johnson Home's proposed alternative payment plans, especially given its heavy indebtedness to the IRS and its history of non-compliance.

Finally, Johnson Home contends that the offer of a mortgage on Ms. Johnson's residence was "gratuitous prior to [the] assessment of the trust fund recovery penalty," and that by considering the possibility of using the equity in Ms. Johnson's residence to pay Johnson Home's tax liability the Appeals Officer erroneously imputed the obligations of the taxpayer to its principal, Ms. Johnson. Pl. Mem. in Supp. of Mot. for Summ. J. at 16. There is no support in the record for this assertion. The Appeals Officer

18

did not disregard the separate legal status of Johnson home and its principal; rather, the AO considered the possibility of using the equity in Ms. Johnson's residence to help pay Johnson Home's employment tax liabilities because at the CDP hearing Johnson Home presented this as an option.

IV.

The Court concludes as a matter of law that the IRS did not abuse its discretion in sustaining the levy on Johnson Home's property. Defendant's motion for summary judgment is granted and its administrative determination is affirmed; plaintiff's motion is denied and the complaint is dismissed.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, NY
September 16, 2005